Case 17-5065 Samuel Fields v. Scott Jordan. Oral argument 30 minutes per side. Mr. Kirsch for the appellant. You may proceed. Good afternoon. May it please the court. Today I would like to discuss claims 1 and 5. But because claim 1 is a more complex claim, I would like to start with the failure to call Dr. Schilling aspect of claim 5 and then use the remainder of my time for claim 1 unless the court directs me otherwise. That's fine. All right. This claim is about the unreasonableness of counsel's withholding of available unique mitigating evidence from the jury's consideration of whether Mr. Fields should live or die. The Supreme Court has long recognized that evidence of severe and debilitating mental illness such as PTSD is meaningful mitigation evidence that a jury must consider. And counsel's investigation of Mr. Fields' background revealed that Fields suffers from PTSD and polysubstance abuse disorder and had an abnormal EEG that was consistent with a structural brain lesion. And counsel rightly believed that this evidence supported the case for life and planned to use it during the sentencing testimony through the, I'm sorry, through the sentencing hearing, through the testimony of Dr. Schilling. However, although Dr. Schilling was ready, I mean, at the sentencing hearing, just right out in the hallway, counsel failed to present Mr. Fields' severe mental illness as part of the mitigation case. The state court found under Strickland that counsel's performance was not efficient. But under Strickland, the relevant question is not whether counsel's choices were strategic, but whether they were reasonable. The first finding that I'd like to address is that the state court found that counsel reasonably omitted this testimony because the attorney Baker was honoring Fields' request to not present any mitigating evidence. And this was an unreasonable finding because Baker knew that it was his call to make, not Fields' call to make. And he was exercising that call with respect to other witnesses. Although Fields had told his counsel that he did not want to present any mitigating evidence, counsel took the matter to the judge when the judge said that counsel had a duty to save Fields' life and to present mitigating evidence even if Fields objected to it. And counsel understood that and made that call with respect to the one witness that Fields was most concerned about, his mother. Well, couldn't, couldn't it be a strategic decision not to call Dr. Schilling because Dr. Schilling had some negative information about Mr. Fields as well as helpful information? Well, no, Your Honor, because counsel believed that Dr. Schilling's testimony was favorable. Counsel specifically said during the post-conviction hearing that the fact that there may have been something harmful about the testimony was not a reason for not putting Dr. Schilling on. Counsel had considered all of these things and whatever potential harmful information there could have been and determined that Dr. Schilling's testimony was favorable. So on the, on the performance prong, we would have to find that the state court's determination was unreasonable, correct? Yes, yes, and it was unreasonable for the reason that I was saying earlier that it did not focus on, it focused on solely whether counsel's choice was strategic but not whether counsel's decision itself was reasonable. And our argument is that this was unreasonable because counsel believed that this testimony was favorable and there was no, there were already, he was already going against Fields' wishes anyway by presenting the mother and, and also presented Fields' brother who he also objected to. And if counsel was going to go ahead and present the abuse facts through Mr. Fields' mother and brother and put that information out there, once they made the decision to present that trauma history, then expert testimony was necessary so that the jury could fully understand and contextualize how that abuse affected, affected Mr. Fields' ability to function in the world. The Andrus case, something very similar happened. The defense counsel put on some facts about the client's abusive background but not the client's PTSD and the Supreme Court said, found deficient performance, deficient performance because the failure to call additional experts, quote, fettered the defense's capacity to contextualize or counter the state's evidence. And without this kind of expert testimony, then the prosecutor was free to argue that either the abuse didn't occur, which the prosecutor did argue, or that also that whatever did occur was not traumatizing. And so had, had counsel put on this expert, that would have taken does either taken those arguments away completely or taken the weight out of those arguments altogether. And did the, did the state court determine whether this was prejudicial? In other words, what's, what's our standard of review on that here? The state court did not determine, make a prejudice determination. So the standard of review in this court is de novo. And so this, this court is assessing prejudice for the first time in this case. And Mr. Fields, and there are several factors that establish prejudice in this case. Number one, the Supreme Court and this court too, have repeatedly found that the omission of this kind of evidence is prejudicial, even in cases where the facts of the crime are brutal. In William's case, the Sears case, Porter case, all, all talk about this. And secondly, this evidence is, is totally different than what the jury heard. The jury didn't hear anything about PTSD. They didn't hear about his structural lesion in his brain, the abnormal EEG. They didn't hear anything about a reason for his severe substance abuse, that that arose out of the traumatic childhood that he experienced. Also, the jury would have heard how this kind of drama, this kind of trauma can negatively affect the developing brain. It can also lead to severe impairments in functioning. It can be debilitating. It can, it leads to where people who suffer from this kind of abuse often turn to alcohol or drugs as self-medication against the anxiety that they experience. And as I kind of mentioned earlier, this evidence would have contextualized and countered the prosecution's argument, belittling and dismissing the abuse testimony that was presented. And even without this omitted evidence, the jury nonetheless deliberated for 12 hours. So counsel only presented two witnesses during mitigation. It just barely scratched the surface. Could that be because the jury was, was still thinking about a residual doubt about his guilt at all? Well, wouldn't Dr. Schilling's evidence conflict with a residual doubt finding by the jury? No, your honor, it would not have. There was nothing about Dr. Schilling's testimony that was, that conflicted with a residual doubt defense. The purpose of his in childhood development. And the Supreme Court has specifically said in the Wiggins case that this kind of evidence is not inconsistent with residual doubt. If you want to finish on this, that would be fine. I see your time is elapsing and I know you wanted to spend time on the first issue. So feel free to move to that when you're ready. All right, your honor. Thank you. So I just want to conclude this, this part of the argument, just wanted to say that the abusive picture, the abusive home that counsel presented was only part of the picture. The expert evidence would have helped the jury understand how Mr. Field's background resulted in severe psychological and substance abuse problems that were lifelong that impaired him throughout his life. And a reasonable probability exists that the expert testimony explaining the real world impacts resulting from this abuse would have made a difference to at least one juror. Now I would like to turn to the juror misconduct claim. The Supreme Court has squarely established that jurors must decide a case based on the evidence at trial. Turner v. Louisiana, the Supreme Court said trial by jury in a criminal case necessarily implies at the very least that the evidence developed against the defendant shall come from the witness stand in a public courtroom. And then the court reaffirmed that again in Parker v. Gladden and also said that the rights of confrontation and cross-examination are among the fundamental requirements of a constitutionally fair trial. But the Supreme Court has never said that there shall not be any juror experiments or that that conflicts with the right to a fair trial, has it? I'm not aware of a case like that, Your Honor. So can we rely on a case like Doane to say that the Supreme Court precedent those four cases that you emphasize in your brief are enough to establish a constitutional right here? Yes, Your Honor, we can rely on Doane because as this court specifically determined in that case that clearly established Supreme Court precedent, which is what we're talking about here, requires that a criminal defendant be afforded the right to confront the evidence and the witness against him and the right to a jury that considers only the evidence presented at trial. And citing those cases that we just talked about, the Parker and Turner cases. So even if the Supreme Court has not issued a case dealing specifically with a juror experiment, this court has recognized that it's clearly established federal law that a jury must decide a case based on the evidence at trial, not based on extensive evidence. Of course, Doane was a situation where the extrinsic evidence was entirely extrinsic. It was something, you know, done by one juror out of the presence of any of the other jurors, and she came back into the jury and reported. And here, at least the implement that was used to try and see whether you could actually unscrew a screw with it was the evidence from the trial. That's correct, Your Honor, it was. But although the jurors used this one piece of evidence that was part of the trial, they also considered all of this other evidence that wasn't. I mean, they used that to unscrew the jury room, a cabinet door off of the cabinet in the jury room. So they were considering the screws that were in the cabinet, the cabinet door itself, as opposed to the storm window that was at issue in the case. The tension, or I'm sorry, the interaction of that implement with those materials. So this isn't a situation where the experiment that the jury did was confined to the evidence at trial. It clearly involved all of these other pieces that were not part of the evidence at trial, and all of those other pieces had characteristics and were materially different than the objects at trial that they purported to emulate. Is the evidence clear when this experiment occurred? Did it occur at the penalty phase or at the guilt phase? Your Honor, one of the jurors testified that it occurred in the guilt phase. The other juror who testified, her testimony was a little bit, wasn't as clear as to whether the testimony, whether this occurred in the guilt phase or the sentencing phase. But I believe that the district court found that it did occur in the guilt phase because the court found that this was an experiment. This was a response to a way to test the state's evidence. Did the state court decide or even address whether the experiment occurred at the penalty phase? I don't believe that there was a specific finding that this occurred during the guilt phase, but I think that that's definitely implied from the findings that the court did make. So one concern on this is, even if we agree with you that this was a constitutional error to fail to give a new trial because of the experiment, is it harmless error? And what standard of harmlessness do we apply here? It's not harmless error. My understanding, what the court would need to do is first address, the state court did make a finding about harmless error and found that it was not harmless error. And my understanding of the Brown v. Davenport case is that this court will then need to assess the reasonableness of that finding. So the state court said it was harmless error if it was error, right? I'm sorry, yes. I'm sorry. And what test did the state court apply? My reading was it would appear that the state court was applying Chapman and that it was reversing the burden under the Chapman test. Can you address that? Yes, Your Honor, that was exactly my reading as well. They were addressing Chapman and the state court put the burden on Mr. Fields instead of the burden on the Commonwealth. The appropriate burden is on the government to show beyond a reasonable doubt that the error complained of not contribute to the burden obtained. Okay. So if the state court misapplied Chapman, then what standard does the federal court apply in evaluating whether it is harmless error or not? So then this, the federal court applies the Brecht standard. And that standard is, is there a grave doubt about whether the error had a substantial and injurious effect or influence in determining the jury's verdict? And do we need to do an AEDPA analysis after Davenport or not, given that there was the fundamental Chapman error that the state court made? Well, Your Honor, my understanding is that this court does need to recognize that the error that you're talking about that the state court made was objectively unreasonable. That wasn't an objectively unreasonable or contrary to finding an unreasonably application of Chapman or contrary to the standard. But then after making that finding also needs to address prejudice under the Brecht standard. And Mr. Fields can clearly meet that standard. As we've talked about, and as the briefs talk about at length, his ability to unscrew the screws was central to the case. And the experiment as it was conducted was misleading. There was, you know, the material differences between the screws. The experiment essentially operated under conditions that were quite different from that which existed at the crime scene. And the trial court had already excluded the exact evidence that the experiment sought to ascertain. The jurors asked a question about this issue, and the trial court refused to answer it because the answer would have been misleading. So that is just further evidence that what actually happened was misleading. And the Commonwealth's case was also noticeably weak in this case. There was no scientific evidence that implicated Mr. Fields. The medical examiner testified that it was probable that Mr. Fields would have had, or that the perpetrator of the crime would have had blood on him or herself. And Mr. Fields did not have any of the victim's blood on itself. And both of the courts that have reviewed this evidence have found that the evidence was not strong. After the direct appeal, the court found that the evidence of Mr. Fields' guilt of murder was not overwhelming. And then after the second trial, the trial court, you know, when it heard all of the evidence, said, it would not have totally surprised me if the result had come out different. On top of all of that... Was that stated in an opinion, or was that sort of like... That was in the ex parte hearing with Fields' counsel. It's in the record at 54-1, and the page ID is 11221. On top of all of this, you know, the jurors deliberated for eight hours about the guilt, which is a substantial length of time. And the fact that they even conducted this experiment at all shows that they had questions about the case, that the state's evidence was not overwhelming. On top of it... Your client did confess and was found with the body. So those are two factors weighing the other way. That is correct, Your Honor. Well, he made statements that the prosecution interpreted as confessions. But Mr. Fields, both of the officers who took those, noted that Mr. Fields was intox... Or that they could smell alcohol in Mr. Fields at the time that they heard these statements. And the jury heard all... Of course, heard all of that information. They heard that he was in the home. They heard what he supposedly said. And they still were thinking about this. I mean, if that were sufficiently strong evidence in their minds, they wouldn't have deliberated for as long as they did. Or... Well, you don't know how they approached it. And I mean, that's pretty speculative to say that they wouldn't have sort through. Not... One of which was the claims that someone else, a specific someone else, had actually committed the crime. And a jury that's really carefully looking at all of the evidence is going to go through all of that as well as all of the evidence about Mr. Fields himself and the things that he said. It is, after all, up to the jury to make the determination of what did he say and what did that mean. Yes, Your Honor. And I think you raise a great point that, I mean, there was a lot of other evidence here that there was a strong case that Mr. Fields did not convict this crime at all. The person who had the motive and the opportunity to commit the crime, Minnie Burton, I mean, that was Fields' main defense was that he was not the one that did this and she's the one that did. Which clearly the jury did not buy. Well, they did find against Mr. Fields, but a big part of this case and that defense was all wrapped up with this experiment that we've been talking about. Because Mr. Fields was trying to show that he didn't do this as the Commonwealth alleged. He was not the person who removed this window, as the Commonwealth alleged, in this way, within this short time frame. The only way to get into the house, I mean, there was no evidence of any other broken door or anything else. There was a broken screen, I believe, on one of the windows but all of the other windows were locked and all of the doors were locked. But Ms. Burton did have keys to the house. Did the Fields lawyers present to the jury the theory as to exactly when Ms. Burton could have murdered Ms. Horton? Well, yes, I mean, there was a period of time from about midnight to 1 45 a.m. where she was unaccounted for and Mr. Fields was accounted for that entire time. And so Burton would have had much more time during that time to unscrew the screws on the storm windows, the theory? Or, yes, or she could have used her keys to get in and then unscrew the screws to make it look to set somebody else up or to make it look like someone else got into the house, not her, who has keys to get into the house. You know, I'm going to make it look like somebody else broke in and did this. Given that in Fletcher we did not grant relief, even though there was an experiment that occurred, how would you explain that to us? Well, as I understand the experiment in Fletcher, it did not involve evidence that was materially different than the evidence at trial. It involved a table in the jury room, if my memory is correct, about Fletcher. A table instead of a bed, but you're saying that's a material difference. Exactly, like there was in this case. And even that case, even Fletcher recognized that there are circumstances in which if a jury considers misleading extrinsic evidence, then that is something that a court needs to address and determine whether that prejudice defended or not. And one other thing I wanted to add to when we were talking about the prejudice is that we also know from at least one of the jurors that this experiment did have an effect on her deliberations based on her affidavits and testimony. Was this juror Hall or the other juror? I see your time is up. Unless there are any other questions, we'll let you have your rebuttal time. Thank you. Mr. Nolan. Good afternoon and may it please the court, Brett Nolan for the Appalachian Police, Scott Warden. Your Honor, the primary issue that this court needs to focus on in this case is the petitioner's and the Kentucky Supreme Court affirmed that conviction twice, once on direct review and again in a post-conviction hearing, post-conviction proceeding after a three-day evidentiary hearing. That means that this case comes to the court under AEDPA and the highly deferential standard that that statute imposes. The petitioner can only prevail in this case on all five of his claims if he shows that no fair-minded jurist could agree with the Kentucky Supreme Court's decision in this case. There are three general AEDPA issues that I think pose insurmountable obstacles to the petitioner's case here. The first is that under AEDPA, the state court's decision must be measured against the clearly established holdings of Supreme Court decisions, not dicta and not the decisions of the circuit courts. Second, this court cannot, on a 2254D petition, extend the so is the next logical step of the Supreme Court's decisions. And third, when the Supreme Court frames a clearly established holding at a high level of generality, state courts have substantial leeway to apply that rule in a reasonable way and this court must be deferential in reviewing those decisions. Each of the petitioner's claims fails because of one or more of these rules under AEDPA and for that reason this court should reject the petition and affirm the district court's judgment below. If there are no questions right now, I'd like to start where the petitioner started which is on the mitigation issue in Mr. Schilling's testimony. The first point that I think needs to be made is that we're under the double deference of Strickland here. The testimony was clear that the petitioner's counsel below made a strategic decision to withhold a mitigation case that he had prepared. This is not a case about a failure to interview or failure to prepare evidence, but because of the way the trial went after the deliberations of the guilty verdict, the counsel decided to change his strategy. The evidence was clear that this was a strategic decision and that those decisions are afforded a presumption of reasonableness under Strickland. What's the strategic decision to withhold an expert who has substantial evidence to show the mental state and the abuse state, the PTSD and so forth? Is the strategy this residual doubt idea or what? I think that there are a couple of objectively reasonable strategic reasons that you would make this. One is the possibility of residual doubt which the petitioner's counsel testified at record 89-3, page ID 13-625, that that was one of the considerations at the time. Why would the fact of the horrible childhood affecting one's mental state impact residual doubt? If you look, Judge Moore, at page ID 13-731 and 732, there are a couple places in the record where this is explained by counsel, but those two pages are a pretty good example where the counsel describes the difference between mitigation evidence that would explain why a crime was committed and expert testimony about trauma and how trauma might affect someone. That kind of evidence poses the risk of explaining why the petitioner committed a crime, that the petitioner denied committing, and that if there was any residual doubt left, would undermine his position that he didn't actually do this. There was another point in the post-conviction hearing. I think we quoted this in our brief where petitioner's counsel explains how it's like saying that my dog's never bit someone, I don't own a dog, and then you just keep changing your story. If that happens, the jury might not believe that whatever residual doubt that they have might evaporate because now you're having an expert explaining why he might have done what it seems that his story up to this point. Couldn't the expert frame the testimony as, you've heard from the mother, you've heard from the brother about the abuse that was put on fields. I have more information about that and can show that that abuse can affect a person in a way that's very sympathetic. Couldn't the expert frame the testimony in a way that would be supportive of fields? It might be possible. I don't think that's consistent with the testimony below, but I think the important point, Judge Moore, is that when we're under Strickland and then we're under 2254D, the question here is not what could have been possible or something like that. These are strategic decisions where there is risk in putting this expert on. There might be upside in putting this expert on. Under Strickland, second guessing those decisions to not put on an expert that it very well could be. You could use that expert to your benefit. It very well could be that the prosecution could turn that expert against you, and that making the decision to not put on an expert who carries risk like that, that's an objectively reasonable decision under Strickland. Then this court's role under 2254D1 is only to assess whether the Kentucky Supreme Court's decision that that was reasonable was reasonable. I think because the evidence is clear here, this was a strategic decision. There are objectively reasonable grounds for making that decision. I don't think there's any way to find it to overcome the double deference. I would point the court to the Supreme Court talked about how the possibility of mitigation evidence having both upside and downside makes it objectively reasonable to choose to not put it on in mitigation for fear of that downside causing a problem. I think that the burden under double deference here and under Strickland is just insurmountable given the risks that Dr. Schilling's testimony would. How would you distinguish cases like Wiggins and the other cases where the U.S. Supreme Court has granted relief on a Strickland? Sure. I think that in Wiggins, first of all, we're talking right now about the step one of Strickland, which is the investigation, or I'm sorry, the counsel's performance. In Wiggins, the big problem was that there was no investigation into the mitigation evidence. I think that in Wiggins, you also had evidence. The Supreme Court pointed out that the petitioner didn't really have a history of violence that would have caused problem. The court in Wiggins doesn't really talk about what you do when the potential mitigation evidence that you could have put on had downside and could have caused these risks the way it does here. I think that's how I would distinguish it. Most of those cases, Wiggins, Porter, those cases, you have counsel not preparing an investigation or not investigating all of the mitigation leads. Here, we have a very different scenario where we have counsel that had the expert there, he had another expert on the way, and he made a game time decision. The question here is, were there objectively reasonable basis for doing that? What Strickland cautions against, and again, this is double deference, this isn't just Strickland, but what Strickland cautions against is second guessing those decisions simply because a certain outcome happened. It's true here that the petitioner received a capital sentence, so it's possible to speculate that the strategy didn't work, but that's always going to be the case when you have a habeas petition or you have a Strickland claim. Here, we just have second guessing what the record clearly shows was an objectively reasonable decision to not put on that evidence. If the court doesn't have any more questions on that issue, I'll move to the first. I think I'd like to start by addressing Doane because I think that a lot of the petitioner's case here hinges on how this court interprets and applies Doane. It's clear that the four Supreme Court cases the petitioner relies on, none of those cases involve jury experiments, none of those cases involve the same kinds of legal issues.